IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| HOGAR CREA, INC., and HOGAR CREA INTERNATIONAL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> HOGAR CREA INTERNATIONAL OF CONNECTICUT, INC., et al., <br><br> Defendants. | CIVIL NO. 08-1547 (FAB/BJM) |

**OPINION AND ORDER**

Plaintiffs Hogar CREA, Inc. ("HCI") and Hogar CREA International, Inc. ("HCII") (collectively, "plaintiffs") bring this action against a number of defendants, including Hogar CREA International of Connecticut and Hogar CREA International of Massachusetts ("HCMA") (collectively, defendants). (Docket No. 1, 67). Pending before the court is HCMA's motion to dismiss the amended complaint for lack of subject matter jurisdiction, and for failure to exhaust the internal remedies under Article 11 of the HCII by-laws ("by-laws") before bringing this action. (Docket No. 108). Plaintiffs duly opposed (Docket No. 111). The parties consented to proceed before a magistrate judge (Docket No. 62, 63), and the case was referred to me. (Docket No. 65). After careful review of the briefs on file and evidence submitted, I hereby **DENY** HCMA's motion to dismiss and/or stay proceedings.

**PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiffs are all corporations organized under the laws of Puerto Rico with their principal places of business in Puerto Rico. (Docket No. 1). Defendants are all citizens of Connecticut, Massachusetts, New Jersey, Pennsylvania, Delaware, and Florida. (Id.). After various motions, plaintiffs filed an amended complaint. (Docket No. 67).

According to the amended complaint, HCI employs a distinct treatment system in which recovering drug and alcohol addicts live together in a therapeutic setting in residential homes with

**Hogar CREA, Inc., et al. v. Hogar CREA of Connecticut, Inc., et al.**  Page 2
Civ. No. 08-1547 (FAB/BJM)
**OPINION AND ORDER**

former addicts and licensed therapists. (Id.). After being in existence for some time, HCI began to expand outside of Puerto Rico and HCII was formed to support the expansions. (Id. at ¶ 39). HCII, under a constitution drafted and approved in 1986, plays a role in supervising all Hogar CREA organizations outside of Puerto Rico, including HCMA. HCII's governing board is the "International Steering Committee" ("ISC"), which is charged with supervising all Hogar CREA organizations, evaluating their performance, ensuring compliance with HCI's philosophy and methods, establishing dues to be paid by the Hogar CREA organizations, regulating the bookkeeping and accounting of the organizations, and establishing policies with respect to the functioning, operation, and administration of all organizations. (Id. at ¶ 40). In 2003, a National Steering Committee was established to assist, supervise, and ensure uniformity in operations of HCI operations in the United States, including in Massachusetts. The National Steering Committee is authorized to dissolve any local or state steering committee which in any way does not conform to HCI's guidelines (Id. at ¶ 55). Moreover, each of the state Hogar CREA organizations, including defendant HCMA, has adopted a constitution that sets out the ways in which it is controlled by HCII. (Id. at ¶ 48). Each state Hogar Crea organization also has adopted by-laws that govern its operations and that may be amended only with the approval of HCII. (Id. at ¶ 51).

Various defendants moved to dismiss for lack of personal jurisdiction or alternatively to transfer venue to the District of Massachusetts. (Docket No. 16, 17, 41). The court granted the motions to dismiss as to all but Counts Eight (breach of contract) and Nine (breach of implied trademark licensing agreement) against Hogar CREA Inc. of Connecticut and HCMA. (Docket No. 103). Count Eight alleges that HCMA breached its obligations set forth in its constitution and by-laws, for which plaintiffs demand specific performance and damages. Count Nine alleges that HCMA breached an implied licensing agreement, for which plaintiffs also seek specific performance and damages.

The motion presently before the court involves HCMA's request for dismissal of Counts Eight and Nine.

Hogar CREA, Inc., et al. v. Hogar CREA of Connecticut, Inc., et al.  Page 3
Civ. No. 08-1547 (FAB/BJM)
OPINION AND ORDER

## DISCUSSION

**A.   Subject Matter Jurisdiction**

Federal courts are courts of limited jurisdiction.  "Federal courts have jurisdiction over controversies arising between 'citizens of different states,' provided that the amount in controversy exceeds $ 75,000."  García Pérez v. Santaella, 364 F.3d 348, 350 (1st Cir. 2004); see also 28 U.S.C. § 1332(a)(1).  This court has the responsibility "to police the border of federal jurisdiction."  Spielman v. Genzyme Corp., 251 F.3d 1 (1st Cir. 2001).  The courts must "rigorously enforce the jurisdictional limits that Congress chooses to set in diversity cases."  del Rosario Ortega v. Star Kist Foods, 213 F.Supp.2d 84, 88 (D.P.R. 2002), *rev'd* on other grounds, 545 U.S. 546 (2005) (citing Coventry Sewage Associates v. Dworkin Realty Co., 71 F.3d 1, 3 (1st Cir. 1995)).

A party that seeks the jurisdiction of the federal courts has the burden of demonstrating its existence.  Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).  Here, plaintiffs invoked the court's jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332.  Diversity jurisdiction requires complete diversity between all plaintiffs and all defendants.  Casas Office Machines v. Mita Copystar Am., Inc., 42 F.3d 668, 673 (1st Cir. 1994).  HCMA does not questions the existence of complete diversity between plaintiffs and defendants, and it is evident by the evidence in the record that the parties are completely diverse.  Rather, HCMA contests the sufficiency of the amount in controversy.

Pursuant to Fed. R. Civ. P. 12(b)(1), a party may assert lack of subject-matter jurisdiction as a defense.  A defendant who challenges the existence of diversity jurisdiction can launch the challenge in either of two ways.  "The first way is to mount a challenge which accepts the plaintiff's version of the jurisdictionally-significant facts as true and addresses the sufficiency."  Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).  This type of challenge requires "the court to assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction."  Id. (citations omitted).  The second way to challenge the existence of diversity jurisdiction "is by controverting the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the

**Hogar CREA, Inc., et al. v. Hogar CREA of Connecticut, Inc., et al.**   Page 4
**Civ. No. 08-1547 (FAB/BJM)**
**OPINION AND ORDER**

plaintiff and proffering materials of evidentiary quality in support of that position." Id. This type of challenge, which can be called a "factual challenge," demands a "differential fact finding." Thus, the plaintiff's jurisdictional averments are entitled to no presumptive weight, and the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties. Id. "In conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction." Id., at 363-364. Moreover, when a defendant challenges a plaintiff's jurisdictional allegations, the plaintiff bears the burden of proving, by a preponderance of the evidence, the facts supporting jurisdiction. Thomson v. Gaskill, 315 U.S. 442 (1942); Bank One v. Montle, 964 F.2d 48, 50 (1st Cir. 1992); Rivera v. Hosp. Interamericano de Medicina Avanzada, 125 F.Supp.2d 11, 17 (D.P.R. 2000).

      Here, the court understands it is faced with a "sufficiency challenge" of the jurisdictional facts asserted by plaintiffs.

      Because twelve of the fourteen causes of action were dismissed, the sole surviving causes of action are the claim for breach of contract and the claim for breach of an implied licensing agreement. HCMA argues that "it is impossible to ascertain which of the fourteen causes of action [the] allegation of damages is related to." (Docket No. 108, p. 6). Thus, HCMA argues, if the remaining causes of action do not reach the jurisdictional amount of $75,000, which is the amount required for diversity jurisdiction under 28 U.S.C.A. § 1332(a), then this court lacks jurisdiction. Moreover, HCMA contends that a breach of contract claim would require plaintiffs to plead special damages under Fed. R. Civ. P. 9(g), and because the deadline to amend the complaint has passed, plaintiffs can no longer remedy their failure to plead special damages. (Id. at 7). Finally, HCMA reasons that because plaintiffs have not produced any evidence of their purported damages, it is impossible to ascertain whether the two remaining claims reach the jurisdictional amount. (Id.).

      In determining diversity jurisdiction, a court must look to the circumstances at the time the complaint was filed. Coventry Sewage Associates, 71 F.3d at 4. Subsequent events such as a change in the amount in controversy will not deprive a court of jurisdiction. Thesleff v. Harvard Trust Co.,

**Hogar CREA, Inc., et al. v. Hogar CREA of Connecticut, Inc., et al.**                                Page 5
Civ. No. 08-1547 (FAB/BJM)
**OPINION AND ORDER**

154 F.2d 732 n.1 (1st Cir. 1946); see also Jones v. Knox Exploration Corp., 2 F.3d 181, 182-83 (6th Cir. 1993); Klepper v. First American Bank, 916 F.2d 337, 340 (6th Cir. 1990) (noting that when part of a claim is dismissed pursuant to a motion for summary judgment and the remaining amount in controversy is below the jurisdictional amount, the court retains jurisdiction to hear the remaining claim). The amount in controversy is determined from the face of the complaint, unless it appears that the amount stated was not claimed in good faith. Coventry, 71 F.3d at 4. In the case before the court, plaintiffs' amended complaint sought damages in the amount of no less than $1.5 million. (Docket No. 67, ¶ 106). There is no indication that this claim was made in bad faith. As plaintiffs point out, the amended complaint alleges damages to plaintiffs' reputation, loss of patronage, loss of fund-raising ability, loss of revenue, and loss of ability to procure financial and logistical support. Accordingly, the court has jurisdiction to hear the breach of contract claim and the breach of an implied licensing agreement claim. See Domenech v. Dymax Corp., 952 F. Supp. 57, 67 (D.P.R. 1996) (holding that the court had jurisdiction to hear the breach of contract claim even though it was for an amount less than the jurisdictional limit).

**B.    Failure to Exhaust Internal Remedies Under the By-Laws**

HCMA next argues that the case should be dismissed or stayed because plaintiffs allegedly have not complied with internal grievance procedures. In particular, HCMA looks to Article 11 of the ISC's by-laws, which provides that the ISC has the power to "relieve and take over the functions of any National Central Steering Committee" which (1) fails to abide by the decisions of the ISC, (2) fails to comply with the by-laws, (3) assumes authority not incumbent upon them, and (4) acts to the detriment of the program. (See Docket No. 52-3, p. 15; 108, p. 9-10). Prior to taking over the functions, however, the ISC must "deplete all resources at its disposal as to avoid having to make the above stated decisions. It must appoint a Commission formed by three (3) persons representing three (3) of the member countries, to assist in resolving any situation which may arise in a member country failing to comply with these by-laws, or with the Treatment Philosophy or with its national by-laws. If such situation were not resolved, it shall submit a report with their appropriate evaluation

**Hogar CREA, Inc., et al. v. Hogar CREA of Connecticut, Inc., et al.**                  Page 6
**Civ. No. 08-1547 (FAB/BJM)**
**OPINION AND ORDER**

and recommendations, to the International Steering Committee." (Docket No. 52-3, p. 15-16; 108, p. 10).

Contrary to defendant's assertions, Article 11 does not mandate dismissal of this case. Importantly, Article 11, by its own terms, applies only when the ISC seeks to take over the functions of any "National Central Steering Committee." In this case, it is not clear that defendant HCMA constitutes a "National Central Steering Committee" within the meaning of Article 11. To the contrary, the amended complaint refers to a "National Steering Committee" only in reference to Hogar CREA of U.S.A., Inc. - an organization formed to supervise the various state Hogar Crea organizations, of which defendant is one. Thus, even assuming that the plaintiffs seek to take over the functions of HCMA, the prerequisites set forth in Article 11 for the ISC's take-over of the National Central Steering Committee do not apply. Given the foregoing, defendant's motion to dismiss based on plaintiffs' alleged failure to comply with Article 11 must be denied.

## CONCLUSION

For the reasons described above, I hereby **DENY** HCMA's motion to dismiss for lack of subject matter jurisdiction and for failure to exhaust internal remedies under the by-laws.

**IT IS SO ORDERED.**

At San Juan, Puerto Rico, this 23rd day of November, 2009.

*S/Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge